UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ASHLEY KIRKHART and K.K.,                          Case No. 6:23-cv-01338-MTK

Plaintiffs,                                        **OPINION AND
                                                    ORDER**

vs.

OAKRIDGE SCHOOL DISTRICT, *an
Oregon Public School District*; and GARY
JACKSON, *an individual*,

Defendants.

_____

**KASUBHAI,** United States District Judge:

Plaintiff K.K. is a former Oakridge High School ("OHS") student who competed on the

school's wrestling team. Plaintiff Ashley Kirkhart ("Ms. Kirkhart") is K.K.'s stepmother and a

former Oakridge School District ("OSD") employee. Plaintiffs allege that K.K. was sexually

abused by the school's assistant wrestling coach, Defendant Gary Jackson, and that Defendant

OSD (collectively, "Defendants") retaliated against Ms. Kirkhart after she complained about the

school's failure to adequately respond. Plaintiffs bring state a federal claims against Defendants.

Defendants move for summary judgment on all claims. Def. OSD's Mot. for Summ. J. ("Def.

OSD's Mot.") ECF No. 51; Def. Jackson's Mot. for Summ. J., ECf No. 53.[1] For the reasons

explained below, Defendant Jackson's Motion is GRANTED, Defendant OSD's Motion is

GRANTED in part and DENIED in part.

## BACKGROUND

K.K. was a freshman high school student at OHS during the 2020 to 2021 academic

school year. She was a competitive wrestler and was on the OHS wrestling team.

Ms. Kirkhart is K.K.'s stepmother and a former OSD employee. Reta Doland

("Superintendent Doland") was the OSD superintendent. Doland was also the OSD Title IX

coordinator. Tracy Ross ("Principal Ross") was the OHS principal. Defendant Gary Jackson

("Jackson") was OHS' assistant wrestling coach. The OHS wrestling team practiced in the OHS

wrestling room, which had surveillance cameras.

I.      **K.K.'s Disclosure of Jackson's Abuse**

In March of 2021, K.K. came home from practice and complained to Ms. Kirkhart that

Jackson was acting "oddly and was making her feel kind of uncomfortable by his interactions . . .

and just his odd behavior." Slezak Decl., Ex. 23 ("Kirkhart Depo.") at 38:14-18, ECF No. 54-2.

Ms. Kirkhart asked for more details and K.K. explained that Jackson "was laying on the mat and

kind of thrusting his hips" in front of the girls at practice. *Id.* at 38:16-17, 39:1-2.

The next day, Ms. Kirkhart went to speak with Superintendent Doland about Jackson's

behavior. *Id.* at 40:4-10. Ms. Kirkhart told Superintendent Doland that K.K. had come home

from practice and said that Jackson had been acting oddly. *Id.* at 40:15-18. She also told

---

[1] Jackson filed a Notice of Joinder to OSD's Motion. Def. Jackson's Notice of Joinder, ECF No. 53. Plaintiffs' response brief treats the arguments raised in OSD's Motion as though they apply equally to Jackson. Pl.'s Resp. in Opp., ECF No. 54. The Court addresses OSD's Motion as if it were jointly filed by OSD and Jackson.

Superintendent Doland that she had heard a rumor that Jackson had a "favorite girl" every year on the wrestling team. Slezack Decl. Ex. 22 ("Superintendent Doland Depo.") at 51:2-18, ECF No. 54-2. Superintendent Doland reviewed the video footage from practice with Ms. Kirkhart and told her to keep her informed if she had more concerns. Slezak Decl., Ex. 5 ("December 2021 Letter") at 1, ECF No. 54-2.

In May of 2021, K.K. came home from practice upset and told Ms. Kirkhart that during practice, Jackson "came out of nowhere [and] wrapped his arms around her touching her breasts from behind. This was arm contact not hand contact." December 2021 Letter at 1. The next day, Ms. Kirkhart complained to Superintendent Doland about the incident, and at Superintendent Doland's suggestion, they reviewed the video footage from practice. Kirkhart Depo. at 44:13-19. Ms. Kirkhart testified that the video footage showed that K.K. was standing watching two other people wrestling on the mat when Jackson came up from behind K.K., wrapped his arms around her at chest height, and then lifted her up off the ground. *Id.* at 45:6-22. K.K. reacted by flailing her feet and Jackson then put her down. *Id.* at 45:20-22. K.K. then turned and pointed her finger at Jackson and he stood back, "putting his hands up, laughing at her." *Id.* Superintendent Doland agreed that it was not appropriate and not okay for him to be touching her, especially in that manner, and she said that she would take care of it. *Id.* at 46:13-16. Ms. Kirkhart testified that Superintendent Doland then said, "if that was how Gary was going to behave or interact, then he no longer needed to be a coach." *Id.* at 46:16-17. Jackson then stopped coaching wrestling. *Id.* at 46:23-24.

On November 15, 2021, at the start of her sophomore wrestling season, K.K. came home from school upset because Jackson was at the first practice. Slezak Decl., Ex. 3, ECF No. 54-2. Ms. Kirkhart sent an email to Principal Ross who scheduled a meeting with Ms. Kirkhart and

K.K.'s father the following day. Slezak Decl., Ex. 1 at 1, ECF No. 54-2. Principal Ross told Ms.

Kirkhart that Jackson was no longer an assistant coach and that volunteers were not permitted to

attend practice due to COVID-19 policies. Slezak Decl., Ex. 2 ("Ross Meeting Notes"), ECF No.

54-2. Ms. Kirkhart told Principal Ross about her concerns about Jackson's behavior, including

that K.K. had disclosed that Jackson had put his head in her crotch when wrestling. Principal

Ross told K.K.'s parents that she would investigate the allegations but cautioned against filing a

formal complaint which would have to be publicly disclosed and could stigmatize K.K. Ross

Meeting Notes at 3. The following week, Principal Ross emailed Superintendent Doland and

informed her that she had reviewed the November 15, 2021, video footage from practice and

confirmed that Jackson had wrestled with K.K. "twice and no head in crouch [*sic*]. Formal

Complaint? No (both parents said this)[.]" Slezak Decl., Ex. 3.[2] Jackson did not attend any other

practices.

On December 18, 2021, Ms. Kirkhart emailed Superintendent Doland and informed her

that Jackson had attended an off-campus tournament as a spectator and "was glaring" at K.K.

Slezak Decl. Ex. 4, ECF No. 54-2. Ms. Kirkhart stated that Jackson had attended another off-

campus tournament on December 11, 2021. *Id.* "He did not ride the bus but was in direct

interaction with the team and our daughter as there [*sic*] coach." *Id.* Superintendent Doland

informed Ms. Kirkhart that she was working with legal counsel on the issue and requested that

Ms. Kirkhart provide additional details which would be forwarded to the investigator. *Id.* She

also asked if K.K. would be available to talk with the investigator during the December break,

and Ms. Kirkhart confirmed that K.K. was available. *Id.*

---

[2] When asked in deposition whether K.K. wrestled with Jackson at that practice K.K. testified "I
don't believe so." Vickers Decl., Ex. 1 ("Def.'s Depo. Tr. of K.K.") at 50:1-2, ECF No. 52-1.

In December 2021 K.K. told Ms. Kirkhart that Jackson had been touching her inappropriately during the May 2021 wrestling practices. Kirkhart Depo. at 119:14-19. K.K. explained that Jackson would insist on wrestling with her during practices and that he would engage in wrestling moves where his hands would touch her inner thighs, genitals, and buttocks. Slezak Decl., Ex. 24 ("K.K. Depo") at 38:19-20, 39:17-19, ECF No. 54-2. K.K. did not observe Jackson engaging in similar wrestling moves with other students on the team. *Id.* at 39:1-3.

On December 20, 2021, Ms. Kirkhart sent a formal complaint by email to the OSD School Board Chair, Kevin Martin, stating, "I will be sharing information with you and have with law enforcement [*sic*] that I fear will jeapordize [*sic*] my employment as well." December 2021 Letter at 1. Ms. Kirkhart then reported K.K.'s specific disclosures about Jackson's physical contact with her during wrestling practices. Doland Depo. at 78:16-21. Ms. Kirkhart stated that she had asked DHS and the police "to open an investigation for the conduct commit[t]ed against our daughter by a staff member/volunteer on school grounds." December 2021 Letter at 3. Ms. Kirkhart stated that she had explained to Superintendent Doland that "this whole situation is a mess and we could of handled this better." *Id.* at 2. Ms. Kirkhart ended the December 2021 Letter by stating that "I am potentially sharing information that would need me to be protected by" the employee policies covering whistleblower protections. *Id.* at 3.

Superintendent Doland testified that the first time she learned of any allegation of sexual misconduct against Jackson was following Ms. Kirkhart's December 2021 Letter to Martin. Doland Depo. at 78:9-20. Superintendent Doland testified that the content of Ms. Kirkhart's letter contained allegations that "had not been brought forward along the way." *Id.* at 79:9-16. Following her notice of the disclosures in the December 2021 Letter, Superintendent Doland

made a series of reports of sexual misconduct to the Oregon Department of Education, and to Oregon DHS. *Id.*

On December 22, 2021, Superintendent Doland issued a "Trespass Letter" to Jackson, barring his right to enter OSD's properties, effective immediately. Slezak Decl., Ex. 7, ECF No. 54-2. Also on December 22, 2021, Superintendent Doland sent an email to the Oregon State Police requesting an official investigation in alleged child abuse by Jackson. Slezak Decl., Ex. 6, ECF No. 54-2. On December 23, 2021, on behalf of K.K., Ms. Kirkhart filed for a "Petition for Sexual Abuse Protective Order" by the Lane County Circuit Court against Jackson. Slezak Decl., Ex. 8, ECF No. 54-2. K.K. testified that after everyone heard about Jackson's abuse she was "made fun of and harassed." K.K. Depo. at 43:20-22. Ms. Kirkhart testified that K.K. was subject to bullying and harassment from classmates and the principal. Kirkhart Depo. at 59:22-25. K.K. then transferred high schools. *Id.* Despite being contacted to try out for a college team, she quit wrestling because she had "completely fallen out of love with it." K.K. Depo. at 58:8-9. In deposition, K.K. testified that she had not received any counseling and did not feel like she needed it. *Id.* at 59:10-13. The record does not contain an expert report or other documentation of economic damages.

## II.     Ms. Kirkhart's Employment Dispute

On January 19, 2022, Ms. Kirkhart filed a complaint with the OSD School Board alleging that Superintendent Doland was retaliating against Ms. Kirkhart for sending the December 2021 Letter regarding K.K.'s disclosure of sexual harassment and abuse. Slezak Decl., Ex. 10, ECF No. 54-2. Ms. Kirkhart stated Superintendent Doland had started hovering over her at her workspace and made comments about how much better the working conditions were when Ms. Kirkhart was out. Superintendent Doland then began taking issue with Ms. Kirkhart's friendship

with a coworker and threatened to separate the two because their whispering was purportedly making other people in the workspace feel uncomfortable. She also accused Ms. Kirkhart of acting unprofessionally. *Id.*

Ms. Kirkhart requested a meeting with the OSD School Board to address her concerns. *Id.* On February 4, 2022, Ms. Kirkhart had a meeting with Superintendent Doland and another OSD employee in the board room to discuss her retaliation complaint. Slezak Decl., Ex. 11, ECF No. 54-2. The meeting was unproductive and on February 9, 2022, Ms. Kirkhart sent a second letter to the OSD School Board, requesting to move forward with her retaliation complaint. *Id.* at 2.

On June 16, 2022, Ms. Kirkhart emailed the OSD School Board. Slezak Decl., Ex. 12 ("June 2022 Letter"), ECF No. 54-2. The subject line of the email read "Retaliation complaint follow up #5." *Id.* In the email, Ms. Kirkhart stated that on April 18, 2022, she had notified the OSD School Board that the retaliatory working conditions had taken a toll on her emotional health, and she requested administrative leave. Kirkhart Depo. at 59:8-10; June 2022 Letter. She began taking leave immediately and followed up in May with another email asking for guidance because the only correspondence she had received was an acknowledgement that the OSD School Board had received her emails. June 2022 Letter. She stated that her job was now posted on the district website and requested guidance and information on how to proceed. *Id.*

On September 20, 2022, Ms. Kirkhart emailed the OSD Business Office stating that she would like to return to work as soon as possible once her questions were answered and that her absence was due to "harassment/bullying/retaliation based off a whistleblower report to the board." Slezak Decl., Ex. 13 at 1, ECf No. 54-2. On September 21, 2022, Ms. Kirkhart accepted

an offer of employment from a community services organization in Eugene. Vickers Decl., Ex. 5, ECF No. 52-1; Def.'s Tr. of Kirkhart Depo. at 24:24-25:1.

On September 23, 2022, Ms. Kirkhart filed a retaliation complaint with the Oregon Bureau of Labor and Industries ("BOLI"). Slezak Decl., Ex. 14, ECF No. 54-2. Her complaint stated:

> I have been transferred outside my office to a remote location as an office assistant when I held a confidential position previously. I had access to my essential work areas removed, I can no longer perform my essential duties as I work outside the area where those duties are assigned. I cannot enter school buildings without permission, no other employee is held to this standard. I have had my job classification changed. I have been given report and break times against BOLI law. I have been placed at a location where the mother of a man I filed a complaint and criminal charges against for sexually assaulting my child [works].

*Id.* at 4. In deposition, Ms. Kirkhart described the new office as a closet with a desk and a computer but no phone or working internet. Kirkhart Depo. at 58:20-22.

On October 6, 2022, Ms. Kirkhart submitted a Tort Claim Notice, notifying the OSD of a forthcoming claim for damages arising out of "ongoing bullying, harassment, unlawful employment practices, retaliation by Superintendent Reta Doland and Supervisor Heather Harrison (latest incident date: 9/22/22)." Slezak Decl., Ex. 15, ECF No. 54-2.

On December 1, 2022, Plaintiff emailed an OSD representative that she had "no intent to return to work until conditions are rectified by the district;" and that she had "asked for an accommodation meeting and have been offered no response." Slezak Decl., Ex. 16a at 1, ECF No. 54-2.

On December 26, 2022, Ms. Kirkhart submitted a Tort Claim Notice on behalf of herself and K.K., notifying the OSD and Superintendent Doland of her intent to bring claims based on OSD's retaliation against her and failure to protect K.K. Selzak Decl. Ex. 18, ECF No. 54-2.

On April 5, 2023, OSD terminated Ms. Kirkhart's employment. Slezak Decl. Ex. 20 ("OSD Termination Letter"), ECF No. 54-2. The OSD Termination Letter stated:

> This letter is to inform you that your employment with the Oakridge School District is terminated effective April 5, 2023 due to job abandonment and failure to return to work or provide needed medical verification of need for any continued leave.
>
> You were notified on October 13, 2022 that FMLA leave at 1 day per week was approved based on the request and medical care provider documentation submitted. The notification also indicated you would be required to provide updated medical care provider statements every 3 months. The medical verification was limited only to the time prior to Dec. 16, 2022.
>
> On January 13, 2023 an updated medical care provider statement was requested, with a return to work date for you of February 1, 2023. You did not provide the requested medical provider update of need for any leave, and you did not return to work.
>
> On March 24, 2023 you were once again notified that the updated medical care provider statement was required. You were given a return to work date of April 3, 2023. In addition, you were notified that a pre-termination hearing was scheduled for April 4, 2023 should you not return to work. The updated statement was not provided. Your legal counsel notified the district that you would not be attending the hearing.
>
> To date you have used 736 hours/18.4 weeks away from your job (including paid sick leave and unpaid leave) between October 13, 2023 and April 4, 2023. This time is in excess of that provided under FMLA, which allows 12 weeks.
>
> Due to your failure to report to work on April 3, 2023 as directed, the Oakridge School District is terminating your employment effective April 5. 2023 for job abandonment and failure to return to work as directed since you have exhausted all leave entitlements.

*Id.*

On September 14, 2023, Plaintiffs filed their Complaint with this Court. ECF No. 1.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## DISCUSSION

### I.    K.K.'s Claims

K.K. brings the following claims against Jackson: (1) sexual abuse of a child (2) battery; and (3) negligence under state law. K.K. brings the following claims against OSD: (4) Title IX,

sex-based discrimination under federal law; (5) negligence; and (6) respondeat superior. Defendants move for summary judgment based on Plaintiffs' failure to provide timely notice, failure to prove a dispute of fact regarding economic damages, and failure to show deliberate indifference.

### A.    State Law Claims: Notice Provision of the Oregon Tort Claims Act ("OTCA")

Defendants argue that K.K.'s state law claims are barred because Plaintiffs failed to provide timely notice of their intent to bring a claim under the OTCA.

The notice provision of the OTCA requires plaintiffs seeking to file claims against an Oregon public body or its employees to provide notice of that claim "within 180 days after the alleged loss or injury." Or. Rev. Stat. § ("ORS") 30.275(2)(b). Minors are given an additional 90 days to provide notice of an intent to bring a claim. ORS 30.275(2). "Failure to give timely notice . . . is fatal to a plaintiff's tort claim against a public body." *Denucci v. Henningsen*, 248 Or. App. 59, 66 (2012). "The notice requirement may be satisfied in any of four ways: (1) the plaintiff gives the public body formal notice of claim; (2) the public body receives actual notice of claim; (3) the plaintiff commences an action on the claim; or (4) the public body pays all or part of the claim." *Heng-Nguyen v. Tigard-Tualatin Sch. Dist. 23J*, 275 Or. App. 724, 726 (2015) (citing ORS 30.275(3)).

Here, Plaintiffs do not dispute that Jackson was acting within the course of his employment of OSD, a public body subject to the notice provision of the OTCA. There is also no dispute that K.K. had 270 days to provide a tort claim notice because she was a minor when the injury occurred. The latest date that K.K. discovered her injury giving rise to her state law claims was December 23, 2021, when she signed a petition for a civil protection order against Jackson.

Defendants argue that K.K.'s state law claims are barred because her formal tort claim notice with OSD was not submitted until December 26, 2022, more than 270 days after the discovery of her injury. Plaintiffs respond that Ms. Kirkhart's December 2021 Letter to the OSD School Board, describing K.K.'s disclosure of abuse and stating that she had asked DHS and the police to open an investigation, provided actual notice to OSD. Regrettably, the statutes and caselaw of Oregon do not support Plaintiffs' contention.

When bringing a claim under the OTCA, "the plaintiff has the burden of proving that notice of claim was given as required[.]" ORS 30.275(7). Actual notice requires a claimant to communicate the "time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim against the public body or an officer, employee or agent of the public body." ORS 30.275(6). "[T]o survive summary judgment on the issue of actual notice, plaintiffs ha[ve] to offer evidence sufficient to prove that the state knew about both the incident *and* plaintiffs' intent to assert claims against the state." *Jung Nyeo Lee v. State*, 290 Or. App. 310, 315 (2018). The communication "must warn" the recipient that the plaintiff intends to bring a claim against the public body. *Flug v. Univ. of Oregon*, 335 Or. 540, 554 (2003). Failure to prove actual notice of both the underlying facts *and* the intent to bring a claim "is dispositive." *Id.*

In *Flug*, the employee-plaintiff's attorney sent three letters to the defendant-employer, stating that the employer's proposed accommodations were "almost certainly a violation of federal and state law prohibiting discrimination against employees with handicaps." *Id.* at 550. The Oregon Supreme Court rejected the plaintiff's argument that the letters provided actual notice of an intent to bring a claim, explaining:

> Although the letters stated that defendant's demand for doctors' releases was unlawful, and that other demands and conditions imposed by plaintiff's supervisors

were unreasonable, the import of those statements merely is that plaintiff regarded that behavior as contrary to law or unfair, not that plaintiff intended to sue over those matters.

*Id.* at 554. The Oregon Supreme Court affirmed summary judgment in favor of the defendant based on the plaintiff's failure to prove that the defendant had actual notice of her intent to bring a claim. *Id.*

More recently, in *Jung Nyeo Lee*, following a fatal bus accident on an Oregon highway, the plaintiffs' attorney sent a letter to the Oregon Department of Motor Vehicles ("DMV"), requesting the Oregon Department of Transportation's ("ODOT") accident report, which included ODOT's involvement in the crash response. 290 Or. App. at 313. The attorney's letter also attached a copy of a legal Complaint naming other defendants involved in the accident, but did not include Oregon or its agencies as a defendant. *Id.* The Court of Appeals held that the attorney's letter was insufficient to prove that Oregon had actual notice of the plaintiffs' intent to bring a claim against the state. *Id.* at 316. In rejecting the plaintiffs' argument that a reasonable person in receipt of the letter would have known that the plaintiffs intended on bringing a claim, the Court of Appeals explained that:

> [n]ot everyone injured or killed in an accident on a public highway brings an action against the state, and it would be inconsistent with the Oregon Tort Claims Act to impose such an assumption. The hypothetical possibility of a claim is different from actual notice. As for plaintiffs' information request to the DMV, nothing in that letter suggests that plaintiffs intended to file a claim against the state.

*Id.* at 315. The fact that other individuals involved in the same bus accident had timely served a claim notice to Oregon was insufficient to show "that *these plaintiffs* intended to pursue claims against the state[.]" *Id.*

Both *Flug* and *Jung* affirm the principle that "[p]ersons seeking to maintain actions against public bodies must do so in strict compliance with [the] statutory provisions" of the OTCA. *Gable v. State ex rel. State Wildlife Comm'n*, 23 Or. App. 670, 672 (1975).

Here, the December 2021 Letter provided notice of the time, place and circumstances giving rise to the claim but it failed to warn Defendants of Plaintiffs' intent to bring a claim. In the December 2021 Letter, Ms. Kirkhart stated that she asked the police and DHS to open an investigation, that that situation could have been handled better, and that she was "potentially sharing information that would need me to be protected by" OSD's whistleblower protection policy. December 2021 Letter. Plaintiffs' argument that these statements were sufficient such that a reasonable person would conclude that Plaintiffs intended to bring a claim is unsupported by a citation to caselaw and is contrary to *Flug* and *Jung*. *See* Pls.' Resp. at 16, ECF No. 54. Plaintiffs argue that Defendants should have assumed that Plaintiffs intended to bring a claim because Ms. Kirkhart had notified them that K.K. was abused by a school employee and Superintendent Doland handled the situation poorly. However, [j]ust as "[n]ot everyone injured or killed in an accident on a public highway brings an action against the state," so too, not everyone abused by a school employee while at school brings a claim against the employee or the school district. *Jung Nyeo Lee*, 290 Or. App. at 315. Defendants are entitled to summary judgment of K.K.'s state law claims because Plaintiffs fail to provide evidence showing that Defendants had actual notice of K.K.'s intent to bring a claim within 270 days of the discovery of her injury.

**B.    Federal Claim: Title IX — 20 U.S.C. § 1681**

K.K. brings a Title IX claim against OSD. She alleges that Superintendent Doland and Principal Ross' knowledge of Jackson's conduct amounted to discrimination based on sex and

that their failure to follow OSP's policies and to investigate K.K.'s complaints of sexual harassment amounted to deliberate indifference. K.K. seeks economic damages of $500,000.[3]

Defendants argue that there is no evidence in the record that K.K. suffered compensable economic damages; for example, she has not received counseling or incurred medical costs arising from her injury nor has she provided evidence of any other economic damages. In response, Plaintiffs counsel *argues* that he has "retained two qualified experts, available and willing to testify to admissible facts or opinions that would create questions of fact with respect to economic damages." Pls.' Resp. at 15. Arguments in a legal brief, however, are not facts. Missing from this record is evidence creating a dispute of fact about economic damages to K.K. Because Defendants have shown an absence of evidence regarding K.K.'s compensable damages, under Fed. R. Civ. P. 56(a), Plaintiffs "must go beyond the pleadings and identify facts which show a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Plaintiffs' counsel failed to submit evidence of K.K.'s economic damages and Defendants are entitled to summary judgment on this claim. The Court declines to reach the merits of the claim because there is no evidence creating a dispute of fact on the requested relief.

## II.     Ms. Kirkhart's Claims

Ms. Kirkhart brings claims for employment retaliation against OSD under ORS 659A.199 and Title VII 42 U.S.C. § 2000 et seq. Defendants move for summary judgement based on failure to provide timely notice, failure to exhaust administrative remedies, and no dispute of material fact on the merits of the claims.

---

[3] Plaintiffs withdraw K.K.'s claim for noneconomic damages for her Title IX claim. Pls.' Resp. at 17.

### A.    Tort Claim Notice — ORS 659A.199

OSD argues that Ms. Kirkhart's retaliation claim under ORS 659A.199 is barred for failure to give timely notice. Ms. Kirkhart had 180 days from the discovery of an injury to provide OSD with notice of her intent to bring a claim. ORS 30.275(2)(b). Ms. Kirkhart discovered her injury on April 18, 2022, when she sent an email to the OSD School Board explaining that the retaliatory working conditions had taken a toll on her emotional health and she was requesting administrative leave. June 2022 letter. Within 180 days, on October 6, 2022, Ms. Kirkhart submitted a formal notice of her intent to bring a claim. Slezak Decl., Ex. 15, ECF No. 54-2. OSD therefore received timely notice of Ms. Kirkhart's intent to bring a claim for an unlawful employment practice.

### B.    Exhaustion of Administrative Remedies — Title VII

OSD argues that Ms. Kirkhart's Title VII claim is barred because she failed to file a complaint with the Equal Opportunity Commission ("EEOC"). Plaintiffs respond that Ms. Kirkhart's complaint to BOLI satisfied her state and federal exhaustion requirements.

"To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim." *Lyons v. England*, 307 F.3d 1092, 1103-04 (9th Cir. 2002). "[I]f the claimant first 'institutes proceedings' with a state agency that enforces its own discrimination laws—a so-called 'deferral' state—then the" claimant has 300 days to file a claim with the EEOC. *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999) (citation omitted). If the EEOC and the deferral state have a "worksharing agreement," then a complaint filed with the state agency within 300 days of the alleged unlawful practice "is deemed automatically filed with the EEOC" and proceeding with the state agency process can satisfy the administrative exhaustion requirement. *Id.* at 1175.

Oregon is a deferral state with a worksharing agreement between BOLI and the EEOC. Or. Admin. R. 839-003-0015.

Because Ms. Kirkhart filed a complaint with BOLI on September 23, 2022, her Title VII claim is not barred for failure to exhaust administrative remedies. Slezak Decl., Ex. 14, ECF No. 54-2.

**C.    Retaliation Under ORS 659A.199 and Title VII**

Regarding the merits of the retaliation claims, OSD argues that Ms. Kirkhart's retaliation claims are waived because she failed to address OSD's arguments in opposition to the motion for summary judgment.

The Ninth Circuit has "previously held that [the] plaintiff has 'abandoned . . . claims by not raising them in opposition to the defendant's motion for summary judgment.'" *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (quoting *Jenkins v. Cty. of Riverside,* 398 F.3d 1093, 1095 n.4 (9th Cir.2005)). Here, however, Plaintiff's opposition addresses the procedural arguments of the retaliation claims and cites to evidence in the record directly related to the merits of those claims. Although Plaintiffs' counsel failed to fully address arguments raised by OSD, the Court must uphold its duty to apply the law and cannot ignore evidence cited by Plaintiffs that obviously creates a dispute of fact. Plaintiffs' opposition briefing was not an abandonment of Ms. Kirkhart's retaliation claims.

"[T]he Oregon Supreme Court has 'looked to Title VII precedent to analyze claims brought under other, analogous provisions of ORS chapter 659A.'" *Howard v. City of Coos Bay*, 871 F.3d 1032, 1049 (9th Cir. 2017) (quoting *Portland State Univ. Chapter of Am. Ass'n of Univ. Professors v. Portland State Univ.*, 352 Or. 697, 711 (2012)). Title VII, § 704(a) prohibits employers from retaliating against employees who oppose an unlawful employment practice. 42

U.S.C. § 2000e-3; *see E.E.O.C. v. Dinuba Med. Clinic*, 222 F.3d 580, 586 (9th Cir. 2000).

Similarly, ORS 659A.199(1) provides that an employer may not "retaliate against an employee

. . . for the reason that the employee has in good faith reported information that the employee

believes is evidence of a violation of a state or federal law, rule or regulation." ORS 659A.199 is

analogous to Title VII, §704(a), and the Court proceeds with a single analysis for both claims.

*See Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017) (citing to Title VII

caselaw for prima facie elements under ORS 659A.199).

     If the plaintiff can establish a prima facie case of retaliation, "then *McDonnell Douglas*

burden-shifting is appropriate." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th

Cir. 2002). To establish a prima facie case of retaliation, "the plaintiff must demonstrate that (1)

he was engaged in a protected activity (2) he suffered an adverse employment decision; and (3)

there was a causal link between the protected activity and the adverse employment decision.

*Brunozzi*, 851 F.3d at 998. "The causal link element is construed broadly so that a plaintiff

merely has to prove that the protected activity and the negative employment action are not

completely unrelated." *Poland v. Chertoff*, 494 F.3d 1174, 1181 (9th Cir. 2007). The degree of

proof necessary to establish a prima facie case at the summary judgment stage is "minimal and

does not even need to rise to the level of a preponderance of the evidence." *Lyons*, 307 F.3d at

1112.

     If the plaintiff can establish a prima facie case, "the burden then shifts to the defendant to

show a legitimate, nondiscriminatory reason" for the adverse employment action. *Freyd* v. *Univ..*

*of Oregon*, 990 F.3d 1211, 1228 (9th Cir. 2021). The defendant's burden is not to persuade but to

produce a legitimate, nonretaliatory reason for the adverse employment action. *See Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1148 (9th Cir. 2006).

Last, the burden returns to the plaintiff, who must show that the proffered nonretaliatory reason is pretextual. *See Freyd*, 990 F.3d at 1228. To show that the defendants' legitimate, nondiscriminatory reason was pretext for the retaliation, the plaintiff may rely on circumstantial evidence that is "'specific' and 'substantial' to create a genuine issue of material fact." *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028-29 (9th Cir. 2006) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)).

Here, the record contains sufficient evidence to establish a prima facie case for a claim of retaliation. Ms. Kirkhart was engaged in a protected activity when she reported to the OSD School Board that she believed that an OHS employee, Jackson, had abused K.K. in violation of state law and that Superintendent Doland's response to her prior complaints about Jackson's behavior were improperly handled.[4] Based on the evidence in the record, a reasonable jury could find that Ms. Kirkhart's working conditions were materially altered following her complaint, constituting and adverse employment action. For example, there is evidence that Superintendent Doland started hovering over her, told her the work environment was better when she was out, accused her of being unprofessional, and threatened to separate her and a coworker. Eventually, she was relocated to a small and isolated office and her job position and duties were changed. OSD eventually terminated her employment after she refused to return to work under these new conditions. The temporal proximity of her complaint and the adverse employment decisions are sufficient to establish a causal link at the prima facie stage.

---

[4] Ms. Kirkhart's complaint regarded allegations of sexual harassment and is therefore an opposition of discriminatory conduct protected against retaliation under Title VII.

Next, OSD must provide a legitimate, nonretaliatory reason for its adverse employment decisions. OSB argues that it terminated Ms. Kirkhart for the legitimate, nonretaliatory reason of job abandonment. Ms. Kirkhart took a leave of absence beginning on April 18, 2022. OSD repeatedly requested medical documentation and notified her that her protected medical leave had elapsed by several months. Prior to terminating her on April 5, 2023, OSD gave her a date certain to return to work and notified her of a pretermination hearing. She did not return to work and did not attend the hearing. Based on this record, OSD has met its burden of providing a legitimate, nonretaliatory reason for terminating Ms. Kirkhart. Plaintiffs fail to rebut OSD's legitimate and nonretaliatory explanation for terminating Ms. Kirkhart and summary judgment is granted in favor of OSD on Ms. Kirkhart's retaliation claim as it relates to her termination.

However, OSD's argument that "there is no evidence the District created a hostile work environment" for Ms. Kirkhart is contradicted by the record before the Court. OSD fails to provide a legitimate, nonretaliatory reason for Superintendent Doland's treatment of Ms. Kirkhart and OSD's decision to change Ms. Kirkhart's position and relocate her office. Summary judgment is denied on Ms. Kirkhart's retaliation claim as it relates to a material and adverse alteration to Ms. Kirkhart's working conditions.

## CONCLUSION

For the reasons stated above, Defendant Jackson's Motion for Summary Judgment (ECF No. 53) is GRANTED; Defendant OSD's Motion for Summary Judgment (ECF No. 51) is GRANTED in part and DENIED in part.

DATED this 3rd day of June 2025.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge